FILED
2005 Jun-01 PM 03:24
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| **ORRYON WILLIAMS,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action Number |
| vs. ) | 7:02-cv-2961-UWC |
| ) | |
| **ADVANCE AUTO STORES COMPANY**, ) | |
| **INC., d/b/a ADVANCE AUTO PARTS**, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION ON
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In this case brought under 42 U.S.C. § 1981 ("Section 1981") and 42 U.S.C. § 2000e *et seq.* ("Title VII"), Plaintiff Orryon Williams ("Williams") claims that Defendant Advance Auto Stores Company ("Advance") discriminated against him because of his race. Specially, Williams brings the following claims: wrongful termination, failure to promote, hostile work environment, failure to promote, retaliation, and discrimination in pay, as well as the terms and conditions of employment.

Based on the undisputed facts construed in a light most favorable to the Plaintiff, Defendant's Motion for Summary Judgment is due to be granted on Plaintiff's claims for hostile work environment, failure to promote in 1999,

1

retaliation, and discrimination in pay and the terms and conditions of employment. Defendant's Motion for Summary Judgment is due to be denied as to Plaintiff's termination and 2001 promotion claims.

## A. FINDINGS OF UNDISPUTED FACTS

1. Plaintiff is a black male.  In 1998, he began working for Parts America, an auto parts store, at its store located on McFarland Boulevard, in Tuscaloosa, Alabama.

2.  In 1998, Advance later acquired Parts America, and the Parts America McFarland Boulevard store became an Advance Auto Parts store.  (Doc. 61, Pl.'s Dep. at pp. 68-70, 158.)

3.  Following the merger, Plaintiff began working for Advance as an Assistant Manager In-Training ("AMIT").

4. On November 28, 1999, Plaintiff's District and Store Managers, Neil Kelly and Lee McGruder, respectively, hired Joe Free, a white AMIT over Plaintiff for the position of Assistant Manager.   (Doc. 19, Pl.'s Dep. at p. 183)   Both Kelly and McGruder are black males.  (Pl.'s Dep. at pp. 159, 182-84.)

5. Pursuant to Advance company policy, all employees are given periodic Performance Appraisals by their supervisor.  These Performance Appraisals are given during an employee's first ninety days of employment, upon demotion or transfer, and on an annual basis.  (Doc. 61, Pl.'s Dep. at Ex. 3.)   The Performance Appraisal is

conducted by the supervisor's filling out a standard "Performance Appraisal" form. The form lists fifteen areas of evaluation.[1] In each area of evaluation, an employee may be rated as either (1) exceeds, (2) meets, or (3) does not meet expectations.

6. On November 14, 1999, Plaintiff's Store Manager, Lee McGruder, evaluated Plaintiff's job performance as an AMIT, and rated Plaintiff as meeting expectations in twelve (12) of fifteen (15) areas. Plaintiff failed to meet expectations in the following three (3) areas: planning, sales goals, and store appearance. (Doc. 61, Pl.'s Dep. at Ex. 12.)

7. On July 2, 2000, Plaintiff was promoted from AMIT to Assistant Manager. (Doc. 61 at Ex. 13, Payroll Change Notice.)

8. On October 15, 2000, Store Manager Lee McGruder evaluated Plaintiff's job performance as an Assistant Manager. (Doc. 19 at Ex. 16.) Plaintiff failed to meet expectations in only one (1) of fifteen (15) areas, which included sales/goals. Plaintiff met or exceeded expectations in all fourteen (14) remaining areas. (Doc. 61, Pl.'s Dep. at Ex. 16.)

9. On June 1, 2001, District Manager Roger Crain, white, hired Richard Fordham, also white and a former Carport employee, as an AMIT. (Doc. 67 Crain

---

[1] The fifteen areas are as follows: (1) Customer Service, (2) Communication Skills, (3) Administrative Skills, (4) Planning Skills, (5) Leadership Skills, (6) Dependability, (7) Training/Development, (8) Company Policies and Procedures, (9) Sales/Goals, (10) Payroll/Budget Management, (11) Shrinkage/Expense Control, (12) Inventory Management, (13) Store/Department Appearance, (14) Safety Awareness, and (15) Store Profit.

3

Dep. at p. 113, Doc. 61, Crain Aff. ¶6.)

10. Advance hired Fordham as an AMIT at a higher rate of pay than Plaintiff, who then worked as an Assistant Manager. (Doc. 67, Crain Dep. at p. 48, Crain Aff. at ¶ 6.)

11. On June 29, 2001, the position of Store Manager became open for the McFarland Boulevard Store.

12. Advance's company policy requires that candidates for management positions receive formal notice of the opening and submit to two interviews. (Doc. 41 at Ex. H.)

13. Roger Crain interviewed both Plaintiff and Richard Fordham. (Doc. 19, Crain Aff. ¶ 7.) Crain did not comply with company policy and conduct two sets of interviews for the position of Store Manager, or formally inform Plaintiff that he was being considered for the position at the time of the interview. (*See* Doc. 19, Crain Dep. at p. 113.)

14. Roger Crain selected Richard Fordham, a white AMIT, over Plaintiff, an Assistant Manager, for the position of Store Manager. (Doc. 19, Crain Aff. ¶ 7.)

15. Fordham had approximately twelve years of experience in the auto parts field, and had worked as an auto parts general store manager for Carport, between 1996-2000. (*Id.*) Prior to his employment with Advance, Plaintiff had worked for

eight years in the auto parts industry. (Doc. 61, Pl.'s Dep. at p. 68.)

16. On or about the first week of July 2001, District Manager Roger Crain offered Plaintiff the opportunity to transfer to another Advance Auto Store in Tuscaloosa, located in West End, a predominately Black neighborhood. Plaintiff declined the offer. (*See* Doc. 41 at Ex. B, Pl.'s Dec. ¶ 4.)

17. Pursuant to Advance policy, closing managers are required to break down the cash registers, itemize receipts, and reconcile each register's deposits with its receipts. Each cash register must have $200.00 at closing. (Doc. 19, Pl.'s Dep. at 113.)

18. On May 27, 2001, Plaintiff worked the closing shift, and discovered that one cash register was short by $195. Plaintiff contacted his Store Manager, and then called company headquarters to obtain instruction on how to resolve the discrepancy. After receiving instructions, Plaintiff made the cash register balance by transferring $195 from one of the deposits in the safe into the cash register. Plaintiff then changed the deposit slip to reflect the difference, and Plaintiff initialed both the deposit slip and deposit reports, which did not reconcile. Plaintiff did not receive a reprimand concerning this incident between the time it occurred and July 13, 2001, the date Plaintiff was questioned by an Advance Loss Prevention Investigator. The deposits ultimately reconciled. (Doc. 19, Pl.'s Dep. at p. 105, Doc. 41 at Ex. H, Pl.'s Decl. ¶6.)

19. On July 13, 2001, Randy Lundy, an Advance Loss Prevention Investigator, visited Plaintiff's store and questioned him about the May 27, 2001 discrepancy between the deposit slips and the deposit reports. Lundy concluded that Williams had falsified paperwork. (Doc. 19, Lundy Aff. ¶ 1.)

20. On July 18, 2001, Roger Crain terminated Plaintiff on grounds he had falsified paperwork.

21. On July 22, 2001, Wayne Gay, a black male, was promoted from AMIT to Assistant Manager. (Doc. 19, Crain Aff. at Ex. B.)

22. On November 31, 2001, Plaintiff filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC").

23. Plaintiff filed this action on December 5, 2002. (Doc. 19. at Ex. 19.)

### B.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the movant demonstrates that there is no genuine issue as to any material fact and that, based upon the undisputed facts, the movant is entitled to judgment as a matter of law. *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990); *see also* Fed. R. Civ. P. 56(c).

The party requesting summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and

identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which the moving party believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When ruling on a motion for summary judgment, the court must view the facts in a light most favorable to the non-moving party. *See, e.g., Raney v. Vinson Guard Serv.*, 120 F.3d 1192, 1196 (11th Cir. 1997). "The district court should 'resolve all reasonable doubts about the facts in favor of the non-movant' . . . and draw 'all justifiable inferences . . . in his favor . . . .'" *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991). "All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." *See Hayden v. First Nat'l Bank of Mt. Pleasant*, 595 F.2d 994, 996-97 (5th Cir. 1979). Evidence that is merely colorable, conclusory, or conjectural does not create a genuine issue of material fact. *See, e.g.*, *Brown v. City of Clewiston*, 848 F.2d 1534, 1537 (11th Cir. 1988); *Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989).

## C.  DISCUSSION

### 1.  Termination Claim

In order to establish a *prima facie* case of wrongful discharge under Title VII, a plaintiff must prove the following: (1) that he was a member of a protected class, (2) he was qualified for the position, (3) he was terminated, and (4) that similarly situated employees outside of the protected class were treated more favorably. *See Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003). Once the plaintiff carries his burden of proof, the defendant must then articulate a valid, non-discriminatory reason to justify the adverse employment action. The plaintiff then has the burden of proving that the articulated reason for the discharge is either a pretext for discrimination or is unworthy of credence. *See Hairston v. Gainesville Sun Publ'g Co.,* 9 F.3d 913, 920-21 (11th Cir. 1993).

Defendant contends that Plaintiff can not prove his *prima facie* case because Plaintiff can not show that Defendant treated similarly situated white employees more favorably than Plaintiff. Defendant first offers District Manager Roger Crain's testimony that it would have fired Nathan Riffe, a white AMIT for falsifying paperwork, but it did not fire him because he resigned after admitting to stealing five dollars. (Doc. 61, Crain Aff. ¶ 10.) This is not a valid comparator because Defendant never fired Riffe, even though it contends it would have done so but for his resignation. Defendant next contends that it fired John Hahn for falsifying paperwork, and offers the supporting termination documents to support it. (Doc.

61, Crain Aff. ¶ 10 & Ex. C.)

Plaintiff has submitted evidence under seal that shows Advance did not fire a white female store manager for falsification of paperwork - although she received at least three written reprimands for mishandling cash and having shortages on her register. (Pl.'s Submission Under Seal.)  Plaintiff has also submitted evidence showing a white male employee was written up for a register shortage of approximately $204.00; he received a written reprimand, but was not terminated. (Pl.'s Submission Under Seal.)

The record contains evidence sufficient to establish Plaintiff's *prima facie* case. Moreover, this evidence also creates an issue of material fact as to whether Advance's proffered reasons for terminating Plaintiff on grounds he falsified paperwork are a pretext for discrimination, in light of the fact that the record shows Advance did not terminate similarly situated white employees. Accordingly, summary judgment is inappropriate as to Plaintiff's termination claim.

### 2.    Hostile Work Environment Claim

To establish a *prima facie* case for a hostile work environment claim, a plaintiff must show that (1) he belongs to a protected group, (2) that he was subjected to unwelcome harassment, (3) the harassment was based on his race, (4) the harassment was sufficiently pervasive enough to alter the terms and conditions of

9

employment and create a discriminatorily abusive working environment, and (5) a basis for holding the employer liable. *See Henson v. City of Dundee*, 682 F.2d 897 (11th Cir. 1982); *EEOC v. Beverage Canners*, 897 F.2d 1067 (11th Cir. 1990). The environment must be one that a reasonable person would find hostile or abusive, and the plaintiff must subjectively perceive it as so. *Miller v. Kenworth of Dothan, Inc*, 277 F.3d 1269 (11th Cir. 2002). In evaluating the severity of the harassment, the Eleventh Circuit considers the following factors: (1) the frequency of the conduct, (2) the severity of the conduct, (3) whether the conduct is physically threatening or humiliating, and (4) whether the conduct unreasonably interferes with the employee's job performance. *Miller*, 277 F.3d at 1276. Discourteous, off-handed comments are insufficient to state an actionable hostile work environment, particularly where a plaintiff refers only generally to racial references made by co-workers. *Edwards v. Wallace Cmty Coll*. 49 F.3d 517 (11th Cir. 1995).

Defendant is entitled to summary judgment on Plaintiff's hostile work environment claim, because Plaintiff has failed to prove at least one element of his *prima facie* case, *i.e.*, that the harassment was sufficiently pervasive or severe as to alter the terms or conditions of employment. Plaintiff has failed to prove this element because when asked during his deposition whether his working conditions were intolerable, Plaintiff testified that "[i] would not go as far as to say intolerable."

(Doc. 19, Pl.'s Dep. at p. 214.)  Plaintiff also testified that he did not receive any degrading assignments and described the relations between the white and blacks at his store as "excellent."   (Doc. 19, Pl.'s Dep. at pp. 214-16.)  Moreover, Plaintiff testified that he did not believe there was any racial tension between the store employees. (*Id*.)   Thus, by Plaintiff's own admission, his working conditions were not so pervasive or severe as to create a racially hostile work environment. Accordingly, Defendant is entitled to summary judgment on plaintiff's hostile work environment claim.

### 3. Promotion Claims

To state a *prima facie* case for failure to promote, a plaintiff must prove the following:  (1) he is a member of a protected class, (2) he was qualified for and applied for the promotion, (3) he was rejected, and (4) other equally or less qualified employees who were not members of the protected class were promoted.   See *Combs v. Plantation Patterns*, 106 F.3d 1519, 1539 n.11 (11th Cir. 1997).   Once a plaintiff proves his *prima facie* case, the burden then shifts to the Defendant to rebut the presumption of discrimination with legitimate, non-discriminatory reasons for the adverse employment action.  See C*ombs*, 106 F.3d 1519.  Plaintiff then must prove that the defendant's legitimate reasons are unworthy of credence or are a pretext for discrimination.   A plaintiff's burden is heavier where decision-makers are more

11

likely to be victims of the discrimination plaintiff complains of rather than its perpetrators. *See Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1471 (11th Cir. 1991).

Where a plaintiff complains of racial discrimination under both Title VII and Section 1981, the analysis is the same. *Standard v. A.B.E.L. Servs., Inc.,* 161 F.3d 1318, 1330 (11th Cir. 1998). The *McDonnell Douglas* analytical framework is applicable. *Cooper v. So. Co.*, 390 F.3d 695 n.16 (11th Cir. 2004).

Plaintiff asserts he was unfairly passed over for a promotion when in 1999, Plaintiff's District and Store Managers, Neil Kelly and Lee McGruder, respectively, hired Joe Free, a white AMIT over Plaintiff, an AMIT, for the position of Assistant Manager. (Doc. 19, Pl.'s Dep. at p. 183.) Both Kelly and McGruder are black males. (Pl.'s Dep. at pp. 159, 182-84.) Plaintiff has not alleged facts or advanced evidence that would show that his District and Store Managers, both of whom were black like Plaintiff, hired Joe Free, who is white, for the position of Assistant Manager over Plaintiff because of Plaintiff's race. Moreover, Plaintiff has not proven he was qualified for the position. Accordingly, Defendant is entitled to summary judgment on Plaintiff's 1999 promotion claim. *See Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1471 (11th Cir. 1991)(noting that a plaintiff's burden

is heavier where decision-makers are more likely to be victims of the discrimination plaintiff complains of rather than its perpetrators).

As to his 2001 promotion claim, Plaintiff asserts he was discriminated against on the basis of race when Defendant hired Richard Fordham, a white AMIT over Plaintiff, an Assistant Manager, for the position of Store Manager. Defendant concedes that Plaintiff has proven a *prima facie* case of discrimination for this promotion claim. (Doc. 61, Def.'s Br. at p. 14.)

Defendant argues it had legitimate, non-discriminatory reasons for hiring Fordham over Plaintiff for the position of Store Manager. Defendant offers the testimony of District Manager Roger Crain, who testified that he chose to hire Fordham instead of Plaintiff because of the following: (1) Fordham performed better than Plaintiff during their interviews because Fordham expressed a belief that sales goals could be reached, whereas Plaintiff did not; (2) Fordham had four years of prior experience as a Store Manager with Carport; and (3) Plaintiff failed to prepare the store's advertisements on time. (Doc. 19, Crain Aff. ¶ 7.)

In response, Plaintiff argues that Defendant's proffered reasons are pretextual. (Doc. 67, Pl.'s Br. at p. 15.) First, Plaintiff argues that Defendant's proffer that Fordham performed better during his interview than Plaintiff is

13

disingenuous because Plaintiff's "interview" was really a sham, for Plaintiff did not know that he was being interviewed at the time. The record shows that Advance company policy requires that an interview meet formal requirements, and that prospective employees go through two interviews for management positions. (Doc. 41 at Ex. H.) Crain did not conduct two sets of interviews for the position of Store Manager when he considered Fordham and Plaintiff for that position. (*See* Doc. 19, Crain Dep. at p. 113.)

As to Defendant's contention that Fordham was more experienced, Plaintiff argues this too is pretextual, because Fordham had only 110.64 hours of experience at the Advance store at the time of his promotion to Store Manager, compared to Williams' three years of experience at the Advance store, and eight years of experience in the auto parts industry. (Doc. 61, Pl.'s Dep. at p. 68.)

Next, Plaintiff argues that Defendant's reliance on Plaintiff's purported failure to timely prepare store advertisements is pretextual. For support, Plaintiff advances his testimony wherein he stated he does not recall being informed that he failed to prepare ads on time, and that he first heard of this reason when Defendant cited it in their brief. (Doc. 67 at Ex. A., Williams Decl. ¶ 10.) Plaintiff further argues that he never received a written reprimand for this alleged infraction. The record does not show that Plaintiff was ever reprimanded for failing to timely prepare

14

store ads.

It is clear that a factual conflict exists as to whether Defendant's proffered reasons for not promoting Plaintiff are pretextual; moreover, this conflict is apparent from the evidence submitted by both parties.

Accordingly, Defendant is not entitled to summary judgment on Plaintiff's 2001 promotion claim.

**4.     Retaliation Claim**

While Plaintiff alleges retaliation in his complaint, he fails to address the retaliation claim, or even mention the word "retaliation" in his brief in opposition to Defendant's Motion for Summary Judgment. (*See* Doc. 67, Pl.'s Br.)  Plaintiff has abandoned this claim for retaliation.  *See Access Now v. Southwest Airlines Co.*, 385 F.2d 1324 (11th Cir. 2004).

Accordingly, Defendant is entitled to summary judgment on Plaintiff's retaliation claim.

**5.     Pay Claim**

While the Court has previously determined that Plaintiff adequately pled a pay claim in his Complaint, it appears that Plaintiff has also abandoned this claim, for he does not address it in his brief in opposition to Defendant's Motion for Summary Judgment.

15

Because "[t]he law by now is well settled in this Circuit that a legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed," Defendant is entitled to summary judgment on Plaintiff's pay claim. *See Access Now, v. Southwest Airlines Co.*, 385 F.2d 1324.

### 6. Terms and Conditions Claim

As with his retaliation and pay claims, Plaintiff has also abandoned his terms and conditions claim, for he fails to address this claim in his brief. (*See* Doc. 67, Pl.'s Br.)

Accordingly, Defendant is entitled to summary judgment as to Plaintiff's claim for discrimination in the terms and conditions of employment. *See Access Now,* 385 F.2d 1324.

### D. CONCLUSIONS OF LAW

1. A genuine issue of material fact exists as to whether Defendant's proffered reasons for terminating Plaintiff are pretextual.

2. Plaintiff has failed to prove a *prima facie* case of a racially hostile work environment.

3. Plaintiff has failed to carry his burden of proof for his 1999 promotion claim.

16

4. A genuine issue of material fact exists as to whether Defendant's articulated reasons for not promoting Plaintiff in 2001 are pretextual.

5. Plaintiff has abandoned his claim of discrimination in pay.

6. Plaintiff has abandoned his claim of retaliation.

7. Plaintiff has abandoned his claim of racial discrimination in the terms and conditions of his employment.

## CONCLUSION

Based on these Findings of Undisputed Facts, Defendant Advance Auto Stores is entitled to judgment as a matter of law on Plaintiff's claims of a hostile work environment, failure to promote in 1999, retaliation, discrimination in pay and in the terms and conditions of employment.

Defendant is not entitled to summary judgment on Plaintiff's wrongful termination and 2001 promotion claims.

The appropriate order will be entered.

Done this 1st day of June, 2005.

_____
U.W. Clemon
Chief United States District Judge